### HUMPHREYS *v.* PRUDENTIAL INS. CO.

(*Supreme Court, General Term, Third Department.* November 30, 1891.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE—SUFFICIENCY.
    In an action by a late agent of an insurance company against the company for malicious prosecution, it was shown that defendant had him arrested for larceny on the ground of his failure to pay over, when his agency terminated, certain money that he had received and had paid out for office-rent. Plaintiff testified that he was authorized to pay such rent by his former superintendent, and that he presented the receipt therefor to the succeeding superintendent, who directed him to state his claim to the company. On being informed of the facts, the company directed the superintendent to demand the money, and, if plaintiff refused to pay it, to institute criminal proceedings. The superintendent, without any demand, procured plaintiff's arrest. *Held,* that the evidence would support a finding of want of probable cause.

2. SAME—AFFIDAVIT FOR ARREST—EFFECT.
    Defendant cannot claim immunity on the ground that its superintendent merely stated the facts to the magistrate who issued the warrant, and that it is not bound by the magistrate's deduction therefrom, where the affidavit for the warrant states that plaintiff "did feloniously steal," etc., the described property.

Appeal from circuit court, Albany county. Affirmed.

Action by Alfred Humphreys against the Prudential Insurance Company of America for malicious prosecution. From a judgment entered on a verdict for plaintiff, and from the refusal to grant a new trial, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Henry J. McCormick,* for appellant. *Isaiah Fellows, Jr.,* for respondent.

LEARNED, P. J. This is an appeal by defendant from a judgment on a verdict and from the order denying a new trial. The motion for a new trial was not decided *pro forma.* It was carefully considered by the learned justice, and an opinion was written by him, giving a full examination of the defendant's points. The action was one for malicious prosecution, and the charge of the learned justice was as favorable to the defendant as it could desire. It may perhaps be inferred from his opinion that, if he had been the jury, the verdict would have been different. These matters are important, because they indicate that the trial was thoroughly fair towards the defendant. The plaintiff was appointed an assistant superintendent of agents of the defendant, October 22, 1888. In July, 1889, Mr. Allez, the superintend-

ent of the Troy district, notified him that his employment as such assistant superintendent would cease July 13th. On that day plaintiff handed over to Allez his papers. Among them were a check for $93.27, a receipt for $15, salary for the week, and a receipt for $65.74, rent paid by him for the office. Allez told him he knew nothing about office-rent; that, if that was an agreement with the company, plaintiff would best send the account to them. Plaintiff did so. Five days afterwards Allez made a complaint before the recorder of Cohoes against plaintiff for larceny in stealing notes and coin of the United States of the value of $65.74, property of said company, and the plaintiff was thereupon arrested. On the 1st of August plaintiff was discharged.

In considering the question before us it is important to notice a clause in the agreement above mentioned. Plaintiff was "to act under the control and instructions of * * * my superintendent." One Schmeltz was his superintendent before Allez, and the plaintiff claims that Schmeltz authorized him to pay the rent of the office which he occupied out of moneys received by him for the company. It is not disputed that he did pay this rent. He testifies that the office had been used by the company for a year before he was appointed, and that he himself never hired the office. He testifies that two weeks after signing the agreement he told Schmeltz that he wanted some way to show the company that he was retaining the money for the office-rent, and that Schmeltz said: "That is not necessary. You have my authority. The agreement between you and me is that you are not to pay office-rent." He testifies that he was directed by Schmeltz not to send his vouchers for the rent to the company. This testimony is given to explain the fact that in his weekly accounts sent to the company he had not deducted the sums paid by him for the rent. We have above seen that when plaintiff settled with Allez he made the claim that he should be allowed this $65.74 paid by him for rent, and that he gave a check for the balance, deducting this allowance for rent, and that Allez then received from him the company's papers. He also took from him the key of the office. The check received by Allez was paid, and received by the company. Allez wrote to the company. They replied, authorizing him to make a demand for this money, and, if he did not get the money, to have plaintiff arrested. No demand of this money was made on plaintiff after the interview above mentioned with Allez and before his arrest; nor did Allez see him. The question here is not whether the plaintiff owed the defendant the amount of money which he had paid for rent, and which he retained; nor is it solely whether his retention of that money is criminal. It is whether the defendant had probable cause for causing his arrest. We do not think it necessary to decide whether the verbal agreement between Schmeltz and the plaintiff, testified to by him, was binding on the company. If such an agreement was made, as the jury must have found, it certainly was very material on the question of the plaintiff's intent when he retained the money. And if the plaintiff honestly believed that his alleged agreement with Schmeltz authorized him to apply defendant's money to the rent of the office, we do not think his retention could be larceny. To require him to decide, at the peril of being a criminal if he decide wrong, whether the subsequent verbal agreement with Schmeltz was valid or not, would be unjust. A felonious intent is necessary to constitute the crime. *McCourt* v. *People,* 64 N. Y. 583; *People* v. *Pollock,* (Sup.) 4 N. Y. Supp. 297; *People* v. *Moore,* 37 Hun, 84; *People* v. *Stevens,* 109 N. Y. 159, at page 163, 16 N. E. Rep. 53. It appears that plaintiff was to pay the money he collected to the superintendent. If the superintendent, as he testifies, told him to apply this money to payment of the rent of the office, that was strong evidence to show that he had no felonious intent in this application; and this would be so, even if such application were contrary to the written agreement. Then, when he was discharged by the defendant, and Allez came to him for a settlement, he made

an open statement of his account, claiming his salary and the office-rent paid by him, and giving his check for the balance. This circumstance also was for the consideration of the jury on the point whether the defendant had probable cause to accuse plaintiff of a crime; and the question must be whether the apparent facts were such that a discreet and prudent person would be led to the belief that a crime had been committed by the person charged. *Carl* v. *Ayers*, 53 N. Y. 14; *Hazzard* v. *Flury*, 120 N. Y. 223, 24 N. E. Rep. 194.

The court had charged, without exception, that, if Schmeltz made the alleged contract, it was the company contract. If the jury then believed the plaintiff, they could have found that the defendant made the arrangement as to the payment of rent by plaintiff out of money received by him. Allez testified that he wrote to the company, after his interview with plaintiff, and "informed them of the matter." That they answered back; authorized him to make a demand, and, if he did not get the money, to commence criminal proceedings. He obeyed these directions, except that he made no demand. So far as appears, then, the only facts before the defendant were that plaintiff retained a certain sum of money on a claim that, by the authority of the defendant's superintendent, he had applied it on rent of the office, which they or their agent had previously used, and which plaintiff used; and the question is whether on those facts there was want of probable cause to arrest plaintiff for larceny. The jury thought there was.

It is claimed further that Allez merely stated the facts to the recorder, and that the defendant is not bound by the deductions made therefrom by the recorder. *Thaule* v. *Krekeler*, 81 N. Y. 428. But if we examine Allez's affidavit, we find much more than a mere statement of the facts. His affidavit states that on or about the 13th day of July the plaintiff, with force and arms, did feloniously steal, take, and carry away divers United States treasury notes and national bank-notes and coins, the property of the company; further, that on the said day he had said notes and money in his possession as assistant superintendent of said company, and appropriated them to his use, and refused to return the same. Here it is evident that the affidavit is much more than a mere statement of facts. If Allez had stated the facts, viz., that plaintiff had collected certain money, and claimed to have applied it to a debt of the company by authority of its superintendent, it is quite doubtful whether any warrant, without a further affidavit, would have been issued. But when insurance companies use criminal proceedings for the purpose of collecting money which they claim, there is sometimes a lack of careful statement of facts. It is easier to make a general charge of larceny with force and arms than to give the simple truth. The very facts as claimed by plaintiff, which showed either a lawful, or what was thought to be a lawful, withholding of the money, were concealed. And we think that the defendant cannot throw the blame upon the magistrate. The learned justice, in his opinion, called this paper "a false affidavit." It is said in several cases that the question of probable cause is one for the court, when the facts are not disputed. *Stewart* v. *Sonneborn*, 98 U. S. 187. But the court was not asked to decide that question in this case, except by the motion for a nonsuit. Upon the whole we are of opinion that this case was properly disposed of. We are urged by the defendant to review the finding of the jury upon the facts. We have examined the testimony, as the learned justice did who tried the case. The jury might have disbelieved the plaintiff's testimony. It was a fair question for them to decide, who saw and heard him, whether he was truthful or not. And we cannot say that the verdict shows passion or corruption. The arrest of the plaintiff was not made in the interest of public justice, or to punish for crime. It was made to force the payment of a disputed sum, to compel the plaintiff to yield his claim, in order to escape the mortification of a criminal proceeding. Such conduct on the part of the defendant was reprehensi-

ble.　Where there has been a willful embezzlement of property by an agent, it is right that punishment should follow.　But where the agent makes in good faith a claim to the money, though that claim be incorrect, and plainly wrong, it is unjust that he should be treated as a criminal; and a hasty resort to criminal proceedings without notice to him is to be condemned.　Judgment and order affirmed, with costs.　All concur.